UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 23-93-DLB-CJS

DR. JENNIFER WATSON                                                                    PLAINTIFF

v.                              **MEMORANDUM OPINION AND ORDER**

BOONE COUNTY SCHOOL DISTRICT, ET AL.                             DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Defendants' Motion to Dismiss. (Doc. # 7). Plaintiff having filed her Response (Doc. # 10), and Defendants having filed their Reply (Doc. # 11), this matter is now ripe for review. For the following reasons, Defendants' Motion is **granted in part** and **denied in part.**

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dr. Jennifer Watson alleges sex discrimination against Defendants Boone County School District and Matthew Turner, Superintendent of Boone County School District. (Doc. # 1). Dr. Watson sued Turner both in his individual and official capacities. (*Id.*). Dr. Watson has worked for Boone County School District ("the District") since 2000. (*Id.* ¶ 10). In 2017, she earned the position of Assistant Superintendent, which she still holds. (*Id.*). Defendant Superintendent Turner was hired by the District in 2020. (*Id.* ¶ 12).

In the fall of 2021, Dr. Watson and other women within the Cabinet Administration[1] had a meeting with Chief Operating Officer Eric McArtor and Chief Academic Officer Jim Detwiler regarding Superintendent Turner's treatment of women.  (*Id.* ¶ 13).  This treatment "included but [was] not limited to his public dismissiveness of their contributions in meetings, his open refusal to let them speak at meetings and his overall derogatory treatment of only the women within the Cabinet."  (*Id.* ¶ 14).

Dr. Watson alleges that Superintendent Turner wrongfully promoted a lesser experienced male employee for the position of Chief Academic Officer rather than promoting her.  (*Id.* ¶ 18).  In August 2022, the existing Chief Academic Officer, Dr. Detwiler, took a planned medical leave for an unplanned amount of time.  (*Id.* ¶ 16).  The two individuals who could replace him were Assistant Superintendents Dr. Watson and Mike Poiry.  (*See id.* ¶ 17).  Dr. Watson alleges that she had "more years of experience and more experience in Administration and with the specific requirements of Chief Academic Officer than Mike Poiry."  (*Id.* ¶ 17).  Despite Dr. Watson's experience, Superintendent Turner appointed Mr. Poiry to the newly vacant Chief Academic Officer position, which was a promotion with a pay increase.  (*Id.* ¶ 18).  Dr. Watson alleges she was never even "spoken to, interviewed or approached" about taking the interim position as Chief Academic Officer.  (*Id.* ¶ 19).

Later that month, Dr. Watson was notified that she needed to pick up a letter regarding scheduling a disciplinary hearing.  (*Id.* ¶ 20-21).  The letter was related to the District having not received Title III funds.  (*Id.* ¶ 21).  Dr. Watson alleges that acquiring these funds was not her responsibility nor part of her official duties.  (*Id.*).

---

[1]     The Cabinet Administration is an "advisory body composed of the District's highest-ranking leaders as selected by the Superintendent." (Doc. # 7 at 4, n.1).

2

The hearing occurred on September 2, 2022. (*Id.* ¶ 23). Dr. Watson alleges she had been advised by Dr. Detwiler to not consult with an attorney because the result of the hearing would be "only a 'verbal reprimand.'" (*Id.* ¶ 22). The hearing was conducted by Chief Operating Officer, Eric McArtor, HR Director, Eric Ball and Chief Academic Officer, Dr. Detwiler. (*Id.* ¶ 23). Dr. Watson alleges that these Cabinet members recommended to Superintendent Turner that Dr. Watson receive a private reprimand. (*Id.* ¶ 25).

On September 9, 2022, Dr. Watson received a letter stating that she "was found to have exhibited conduct unbecoming of a teacher and violating the Teacher Code of Ethics under the Kentucky Revised Statues and Kentucky Administrative Regulations." (*Id.* ¶ 26). Superintendent Turner reported Dr. Watson to the Educational Professional Standards Board ("EPSB"), placed her on a one-year probation, implemented a Corrective Action Plan, and administered a private remand. (*Id.* ¶ 27). Dr. Watson alleges that Superintendent Turner did not conduct any disciplinary hearings "as required by law." (*Id.* ¶ 28).

Dr. Watson alleges that she "was not responsible for Title III funding for the 2022-2023 school year in the [D]istrict nor was she the direct or indirect supervisor of the employee responsible for [the District's] failure to obtain the funds." (*Id.* ¶ 29). Dr. Watson alleges that when she met with Superintendent Turner and Assistant Superintendent Poiry to discuss the Corrective Action Plan, Turner "began criticizing Dr. Watson for a myriad of reasons, none of which were related to the failure to secure Title III funding." (*Id.* ¶ 30-31).

Dr. Watson alleges that as a result of this harassment and stress, she was unable to work and was forced to take leave under the Family and Medical Leave Act ("FMLA").

(*Id.* ¶ 32). After she returned from leave, Dr. Watson was required to meet with Superintendent Turner weekly. (*Id.* ¶ 33). No other Assistant Superintendent was required to do so. (*Id.*). She was also required to provide Superintendent Turner with additional research and documentation for the programs she was supervising, which no other Assistant Superintendent was required to do. (*Id.* ¶ 34). Even when Dr. Detwiler returned from medical leave and reassumed his duties, Dr. Watson was still required to report to Superintendent Turner, despite Dr. Detwiler being her direct supervisor. (*Id.* ¶ 35).

The EPSB reviewed the allegations against Dr. Watson, along with her rebuttal, and voted to dismiss the case against her without prejudice. (*Id.* ¶ 36). Despite this outcome, Dr. Watson alleges that being reported to the EPSB has tarnished her reputation. (*Id.* ¶ 37). She alleges that this "will prohibit her from ever obtaining the position of Superintendent, which has been her goal her entire career" because even though the case was dismissed it must still be disclosed to prospective employers. (*Id.*).

Dr. Watson filed a timely charge with the EEOC and subsequently filed this action. (*Id.* ¶ 8). Dr. Watson raises five claims in her Complaint. (Doc. # 1). Dr. Watson alleges in Counts One and Two that Defendants Boone County School District and Superintendent Matthew Turner discriminated against her on the basis of her sex pursuant to Title VII. (*Id.* at 6-7). Dr. Watson alleges in Counts Three and Four that Defendants Boone County School District and Superintendent Matthew Turner discriminated against her on the basis of her sex pursuant to K.R.S. § 344.050. (*Id.* at 7-8). Finally, Dr. Watson alleges in Count Five that Defendants did not provide her an

4

adequate hearing pursuant to the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. (*Id.* at 8-9).

On September 18, 2023, Defendants filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6). (Doc. # 7). Dr. Watson filed her Response (Doc. # 10), and Defendants filed their Reply (Doc. # 11). Defendant's Motion to Dismiss is now ripe for review.

## II.     ANALYSIS

### A.     Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Dr. Watson's pleading must meet the plausibility standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to have "facial plausibility," the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). This requires that the plaintiff plead sufficient factual matter to show she is entitled to relief under a viable legal theory. *See Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 773 (6th Cir. 2014). "If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). This Court accepts as true all factual allegations made by Dr. Watson in her Complaint and construes them in the light most favorable to Dr. Watson as the non-moving party. *See Left Fork Min. Co.*, 775 F.3d at 773.

### B.     Discussion

Defendants raise five arguments in support of dismissal. First, Defendants argue that Dr. Watson's claims against Superintendent Turner in his official capacity should be dismissed as duplicative of her suit against the District. (Doc. # 7 at 6). Second, Defendants argue Counts Two and Four should be dismissed because neither Title VII nor the Kentucky Statute impose individual liability. (Doc. # 7 at 7). Third, Defendants argue that Counts One through Four should be dismissed because Dr. Watson has not sufficiently alleged a prima facie case of discrimination. (Doc. # 7 at 8). Fourth, Defendants argue that Counts One through Four should be dismissed because Dr. Watson has not sufficiently alleged a prima facie case of discriminatory failure to promote. (Doc. # 7 at 16). Finally, Defendants argue that Count Five should be dismissed because the September 2, 2022 hearing did not violate Dr. Watson's Constitutional Due Process rights. (Doc. # 7 at 18).

It is clear from the outset that there is a dispute of fact between the two parties regarding the reasons for Dr. Watson's reprimand. Defendants in their Motion explain that each year, the District receives federal funding under Title III of the Elementary and Secondary Education Act. (*Id.* at 2). The purpose of this funding is to provide language instruction for English language learners and immigrant students. (*Id.*). Defendants state that the reason for Dr. Watson's reprimand was that "she had been charged with misconduct for her role in the loss of Title III funds." (*Id.* at 3). However, in her Complaint, Dr. Watson alleges that acquisition of these funds was not her responsibility. (Doc. # 1 ¶ 21, 29). At this stage in the litigation, the Court must accept Dr. Watson's version of the facts as true. *See Left Fork Min. Co.*, 775 F.3d at 773. Therefore, the Court will conduct

6

the following analysis with Dr. Watson's version of the facts—specifically that it was not her responsibility to ensure the District received the $200,000 in funding.

### 1. Dr. Watson has sufficiently alleged a prima facie claim of discrimination.

Defendants argue that Counts One through Four should be dismissed because Dr. Watson has not alleged a prima facie case of discrimination nor discriminatory failure to promote. (Doc. # 8). Dr. Watson brought sex discrimination claims pursuant to Title VII and K.R.S. § 344.050. (Doc. # 1). "Because KRS Chapter 344 mirrors the federal Title VII . . . 'it is common practice to look to the federal counterpart in construing KRS Chapter 344.'" *Vinova v. Henry Cnty. Bd. of Educ.*, No. CV 15-37-GFVT, 2015 WL 7681246, at *3 (E.D. Ky. Nov. 24, 2015) (quoting *Wathen v. General Elec. Co.*, 115 F.3d 400, 408, n.5 (6th Cir. 1997)). The analysis below applies to both Dr. Watson's Title VII and K.R.S § 344.050 claims.

To demonstrate a prima facie case under Title VII, a plaintiff must show that (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006). Defendants do not dispute whether Dr. Watson is a member of a protected class. (Doc. # 1 ¶ 40; Doc. # 7 at 9). Defendants also acknowledge that Dr. Watson is qualified for the position she currently holds. (Doc. # 7 at 9). However, they argue that she has not met elements two and four: that she suffered an adverse employment action or that she has alleged disparate treatment from similarly-situated male employees. (*Id.*). The Court disagrees with both arguments.

### i.     Adverse Employment Action

First, Dr. Watson has alleged sufficient facts showing she suffered an adverse employment action. The Supreme Court has stated that "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The purpose of the "adverse employment action" requirement is to prevent lawsuits being brought based on "trivial workplace dissatisfactions." *White v. Burlington N. & Santa Fe R. Co.,* 364 F.3d 789, 795 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006). The Sixth Circuit has noted that "it is impossible to list every possible employment action that falls into the definition of adverse employment action and a court must consider 'indices that might be unique to a particular situation.'" *Id.* (quoting *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).

Defendants argue that the issuance of the reprimand, placement on the Corrective Action Plan, and report to the EPSB do not constitute an adverse action because these had "no actual employment consequence." (*See* Doc. # 7 at 10-13). Conversely, Dr. Watson alleges that the fact that she was reported to the EPSB has impacted her professional reputation because "regardless of the outcome of the investigation. . . [being reported] will prohibit her from ever obtaining the position of Superintendent". (Doc. # 1 ¶ 37). "[T]o characterize a negative performance evaluation as an adverse employment action 'the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (quoting *Morris v. Oldham*

*County Fiscal Court,* 201 F.3d 784, 789 (6th Cir.2000)). Dr. Watson has made such a showing here by alleging that the report to the EPSB will prohibit her from ever obtaining the position of superintendent. (*See* Doc. # 1 ¶ 37).

Defendants also argue that Dr. Watson has not alleged an adverse employment action because she has not sufficiently alleged a prima facie claim of failure to promote. To allege a prima facie case of discrimination based on failure to promote, Dr. Watson must show "(1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011). The plaintiff's burden at this stage is "not onerous" and "poses a burden easily met." *Id.* (citations omitted).

Defendants argue that Dr. Watson cannot meet her burden on this claim because there was no promotion to be sought—rather, she was denied "nothing more" than an interim position. (Doc. # 7 at 17). In making this argument, Defendants rely on *Creggett v. Jefferson Cnty. Bd. of Educ.*, 491 F. App'x 561, 568 (6th Cir. 2012). In *Creggett*, the court held that the plaintiff had not shown an adverse employment action when he was not asked to fill in an interim position. *Id.* at 568. However, the facts of *Creggett* are much different from this case. For example, in *Creggett*, the interim position was for a period of one to three weeks. *Id.* Here, the interim period was for five months, (Doc. # 10 at 10), and at the time the appointment was made the interim period was unknown. (*See* Doc. # 1 ¶ 16). In *Creggett*, the plaintiff admitted he did not lose pay nor did he offer evidence

9

that he was qualified for the interim position. *Id.* Here, the interim position included a pay increase (Doc. # 1 ¶ 18), and Dr. Watson was qualified because she had the same, if not more, experience than the person who was asked to fill the position. (Doc. # 1 ¶ 17). These facts render this employment action much more than "*de minimis*." (*See* Doc. # 7 at 18) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000)).

Just because there was no formal application process does not mean Dr. Watson's claim is automatically precluded. *See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Where there was no formal mechanism to apply for an open position, the plaintiff will not need to prove that she applied for a promotion. *See id.* "[I]n these circumstances, it is sufficient that the plaintiff was passed over despite being qualified for the job." *Id.* at 1022. Here, because there was no formal application process for the open position of Chief Academic Officer, Dr. Watson "does not have to meet the 'applied for' component of prong two as well as the 'considered for' requirement of prong three." *See id.* Therefore, the only element Dr. Watson has left to show is whether other employees of similar qualifications who were not members of the protected class received promotions.[2]

This remaining element has been satisfied. Dr. Watson had similar qualifications to Mr. Poiry who was given the position because they both held the position of Assistant Superintendent. (Doc. # 1 ¶ 17). Additionally, Dr. Watson alleges that she "had more years of experience and more experience in Administration and with the specific requirements of Chief Academic Officer than Mike Poiry." (*Id.*). Therefore, Dr. Watson sufficiently alleged a claim of discriminatory failure to promote. Because Dr. Watson has

---

[2]   It is not in dispute that Dr. Watson is a member of a protected class. (See Doc. # 7 at 9).

10

sufficiently pled failure to promote and that she is in jeopardy of suffering a tangible employment action, *see White,* 533 F.3d at 402, the adverse employment action element of her discrimination claim has been met.

### ii.     Disparate Treatment

Second, Dr. Watson has demonstrated that she was treated differently than similarly-situated male employees. To show disparate treatment, Dr. Watson must allege facts showing "(1) that [s]he was a member of a protected class and (2) that for the same or similar conduct [s]he was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Defendants argue that Dr. Watson's claim fails on the second element because she cannot point to times her male colleagues were disciplined less severely nor has she identified male employees "who were treated differently in relation to the loss of nearly $200,000 in Title III funds." (Doc. # 7 at 16). However, this argument misunderstands the applicable standard under Title VII.

"[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583 (citations omitted). Mike Poiry is a similarly situated male employee because he held the same position as Dr. Watson (Doc. # 1 ¶ 17), and the Court infers from this that they reported to the same supervisor. Presumably, drawing all inferences in Dr. Watson's favor as is required at the motion to dismiss stage, Mr. Poiry and Dr. Detwiler should have also been investigated

11

for their role in the loss of funds. Mr. Poiry because he also held the position of Assistant Superintendent and Dr. Detwiler because he supervised Dr. Watson and Mr. Poiry. Not only were they not reprimanded, but Dr. Detwiler was one of the individuals who conducted Dr. Watson's disciplinary hearing and Mr. Poiry was involved in implementing her Corrective Action Plan. (Id. ¶ 23, 30). For the foregoing reasons, Dr. Watson has met the element of disparate treatment. Because Dr. Watson has sufficiently alleged sex discrimination under Title VII and K.R.S. § 344.050 against the District, Defendants' motion to dismiss Counts One and Three is **denied**.

### 2. Dr. Watson's claims against Superintendent Turner in his official and individual capacities are dismissed.

Defendants argue that the claims against Superintendent Turner in his official capacity are duplicative because Dr. Watson is in effect "suing the [government] entity twice." (Doc. # 7 at 7). Dr. Watson does not counter this argument in her Response. District courts in the Sixth Circuit generally dismiss official capacity suits alleging Title VII violations where the suit would be "redundant and duplicative" of the suit against the entity. *See, e.g., Maudlin v. Inside Out Inc.*, No. 3:13-CV-00354-TMR, 2014 WL 1342883, at *4 (S.D. Ohio Apr. 3, 2014). Because Dr. Watson raises the same claims against both the District and Superintendent Turner, Defendants' Motion to Dismiss the official capacity claims against Turner is **granted**.

Defendants argue the claims against Superintendent Turner in his individual capacity should also be dismissed because the applicable statutes do not impose individual liability. (Doc. # 7 at 7-8). In the Sixth Circuit, "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII" nor under K.R.S Chapter 344. *Wathen v. Gen. Elec. Co.*,

12

115 F.3d 400, 405 (6th Cir. 1997). Dr. Waston argues that Turner's role as superintendent qualifies him as an employer under Title VII. (Doc. # 10 at 2-3). However, the Sixth Circuit caselaw is clear that individual liability does not attach to a Title VII claim. Under Title VII, an "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and *any agent of such a person*." § 2000e(b) (emphasis added). The Sixth Circuit has previously held that despite this language, "Congress did not intend to provide for individual employee/supervisor liability under Title VII. *Wathen*, 115 F.3d at 405.

Dr. Watson argues that individual liability should be imposed because Superintendent Turner is "solely responsible for the hiring and firing of personnel in compliance with all laws, making him the employer, rather than an agent of the employer." (Doc. # 10 at 2-3). However, district courts in this Circuit have previously rejected this argument imposing individual liability on managers or supervisors. *See Maudlin*, No. 3:13-CV-00354-TMR, 2014 WL 1342883, at *3 (holding that a supervisor role as president of a company did not elevate the defendant to the level of employer, and so was not subject to individual liability under Title VII); *Powell v. Baptist Mem'l Hosp.*, No. 220CV02856JTFATC, 2022 WL 822171, at *2 (W.D. Tenn. Jan. 13, 2022), *report and recommendation adopted,* No. 220CV02856JTFATC, 2022 WL 822031 (W.D. Tenn. Mar. 17, 2022) (collecting cases). Therefore, Defendants' Motion to Dismiss the individual liability claims against Turner is **granted**.

### 3. The September 2, 2022 hearing did not violate Dr. Watson's Constitutional Due Process rights

Finally, Defendants argue that Dr. Watson has not sufficiently alleged facts showing her due process rights were violated. (Doc. # 7 at 18). Dr. Watson alleges in her Complaint that her Fourth, Sixth, and Fourteenth Amendment rights were violated by Defendants. (Doc. # 1 ¶ 67). However, none of the listed Constitutional Amendments apply here.

First, Dr. Watson alleges that her Fourth Amendment rights were violated. "The Fourth Amendment protects from unreasonable searches and seizures." *United States v. Gregory*, 497 F. Supp. 3d 243, 254 (E.D. Ky. 2020). The Court fails to see how the Fourth Amendment would apply on these facts where Dr. Watson does not allege an unreasonable search or seizure by the District. Nor does Dr. Watson elaborate in her Response. (*See generally* Doc. # 10 at 10-11). Therefore, Defendants did not violate Dr. Watson's Fourth Amendment rights.

Second, Dr. Watson alleges that her Sixth Amendment right to counsel and an impartial hearing were violated. (*See* Doc. # 10 at 11). However, the Sixth Amendment does not apply here. "The Sixth Amendment does not attach until a criminal 'prosecution is commenced.'" *Gaetano v. United States*, 942 F.3d 727, 732 (6th Cir. 2019) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). There was no criminal prosecution in this case, nor any threat of criminal prosecution. Therefore, Dr. Watson did not have a Sixth Amendment right to counsel.

Finally, Dr. Watson alleges her Fourteenth Amendment substantive due process rights were violated (Doc. # 1 ¶ 67), and that she was not afforded a procedural or substantive due process hearing pursuant to K.R.S. § 161.790. (*Id.* ¶ 64). Dr. Watson

does not specify which substantive due process right was violated under the Fourteenth Amendment. And the Court will not *sua sponte* craft a potential asserted right. *See Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 500 (6th Cir. 2007) (quoting *Reno v. Flores,* 507 U.S. 292, 302 (1993) ("When reviewing a substantive due process claim, [the court] must first craft a 'careful description of the asserted right.'"). Therefore, the Court finds Dr. Watson's substantive due process Fourteenth Amendment rights were not violated.

Additionally, the Court finds Dr. Watson's procedural due process rights were not violated. Procedural due process requires that "a person . . . be given notice of the case against him and [an] opportunity to meet it." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976)). K.R.S. § 161.790 sets the procedure for termination of a teacher's contract by administrative hearing by the EPSB. "The statute provides for the right to a hearing before an impartial tribunal, the right to have counsel present at the hearing and the right to present and question witnesses." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004). Under this procedure, Dr. Watson was provided notice and a hearing as to the case against her before the EPSB. (Doc. # 1 ¶ 20-25). Therefore, the Court finds Dr. Watson's procedural due process rights were not violated and Defendants' motion to dismiss Count Five is **granted**.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss (Doc. # 7) is **GRANTED IN PART** and **DENIED IN PART.** Specifically:

(a) Plaintiff's sex discrimination claims under Title VII and K.R.S. § 344.050 against the District (Counts I and III) may **proceed**;

(b) Plaintiff's sex discrimination claims under Title VII and K.R.S. § 344.050 against Superintendent Turner (Counts II and IV) are **dismissed with prejudice**;

(e) Plaintiff's procedural and substantive due process claim (Count V) is **dismissed with prejudice**.

(2) Defendants shall file their Answers to Counts I and III within twenty (20) days.

This 4th day of December, 2023.

Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\Cov2023\23-93 MOO.docx